# FBI Decl.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KATHRYN SACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-00244-RLW |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently located in Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001, to July 31, 2002, I was the Assistant Judge Advocate General of the United States Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 271 employees who staff a total of ten (10) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant to the

FOIA, 5 U.S.C. § 552, as most recently amended by the OPEN Government Act of 2007 and the

OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential,

Attorney General, and FBI policies and procedures; judicial decisions; and other Presidential and

Congressional directives.  My responsibilities also include the review of FBI information for

classification purposes as mandated by Executive Order 13,526, 75 Fed. Reg. 707 (2010), and

the preparation of declarations in support of FOIA Exemption 1 claims.  I have been designated

by the Attorney General of the United States as an original classification authority and a

declassification authority pursuant to Executive Order 13,526, §§ 1.3 and 3.1.  The statements

contained in this declaration are based upon my personal knowledge, upon information provided

to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures

generally followed by the FBI in responding to requests for information from its files pursuant to

the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

Additionally, I am aware of the specific treatment afforded to a referral and two consultation

requests to the FBI in relation to FOIA requests that are at issue in the above-captioned lawsuit.

The referral was sent by the Department of Justice, Office of Information Policy ("OIP") on

March 13, 2012, and the consultation requests were made by the Department of Defense, Office

of the Inspector General ("DODIG") on December 6, 2012 and January 30, 2013.

(4)     The purpose of this declaration is to provide the Court and plaintiff with the status

of the FBI's responses to the OIP referral of documents and to the DODIG consultation requests;

to explain the FBI's bases for withholding certain information in the pages of referred documents

and for advising DODIG to withhold certain information in the documents comprising its

2

consultation requests; and to support the defendants' motion for summary judgment in this matter.

(5)     Part I of this declaration addresses the FBI's response to the OIP referral.  Part II of this declaration addresses the FBI's responses to DODIG's consultation requests.

## PART I – OIP REFERRAL

### OIP Referral Correspondence

(6)      By letter dated July 5, 2011, plaintiff made a FOIA request to OIP for information concerning the processing of all FOIA appeals submitted by her.  **(See Exhibit A.)**

(7)      By letter dated March 13, 2012, in accordance with 28 C.F.R. § 16.4 (2003), OIP referred four (4) pages[1] of FBI records to FBIHQ for review and direct response to plaintiff.  In conjunction with this referral, OIP provided the FBI a copy of plaintiff's July 5, 2011, FOIA request.  **(See Exhibit A.)**

(8)      The FBI assigned FOIPA request number 1187152-000 to the referral.

(9)      By letter dated April 24, 2012, the FBI responded directly to plaintiff, releasing all four referred pages.  Of these pages, three were released in part and one was released in full.  The FBI's release letter advised plaintiff that information was being withheld pursuant to FOIA Exemptions 5 and 6.[2]  **(See Exhibit B.)**

### Explanation of Coded Format Used To Explain Withholdings

(10)    As noted previously, the FBI processed a total of four pages referred by OIP.  Of these four pages, the FBI released three pages in part and one page in full.  Each page of the

---

[1]  OIP's referral letter states that it referred a total of three (3) pages to the FBI.  OIP actually referred four (4) pages of records – one document consisting of three (3) pages and one document consisting of one (1) page.

[2]  The FBI initially redacted certain information based on FOIA Exemption 7(E).  Based upon further review, the FBI is releasing that information to plaintiff in conjunction with the filing of this declaration.  The newly released information is located on Bates-numbered pages Sack/FBI-1 and Sack/FBI-4.

processed documents is Bates-numbered sequentially – Sack/FBI-1 through Sack/FBI-4 – and is attached hereto as **Exhibit C**. The attached documents contain, on their faces, coded categories of exemptions that detail the nature of the information withheld pursuant to the provisions of the FOIA. The coded categories are provided to aid the Court's and plaintiff's review of the FBI's explanations of the FOIA exemptions it has asserted to withhold the material. The coded, Bates-numbered pages together with this declaration demonstrate that all material withheld is exempt from disclosure pursuant to FOIA exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(11)   Each redaction/withheld page is marked with the code that corresponds to the categories listed below. For example, if "(b)(6)-1" appears on the page, the "(b)(6)" designation refers to Exemption 6 of the FOIA, which protects against "Clearly Unwarranted Invasions of Personal Privacy." The subcategory "1" narrows the main category into the more specific subcategory of "Names and/or Identifying Information of FBI Support Personnel." In this declaration, the FBI explains its bases for withholding each category of information.

(12)   The coded categories of exemptions corresponding to the FBI's withholdings of information from the documents referred by OIP are set forth as follows:

| CODED CATEGORIES | INFORMATION WITHHELD |
|---|---|
| **Category (b)(5)** | **PRIVILEGED DELIBERATIVE PROCESS INFORMATION** |
| (b)(5)-1 | Internal Communication Concerning Recommendations by Agency Personnel |
| **Categories (b)(6)** | **CLEARLY UNWARRANTED INVASIONS OF PERSONAL PRIVACY** |
| (b)(6)-1 | Names and/or Identifying Information of FBI Support Personnel |
| (b)(6)-2 | Names and/or Identifying Information Concerning Non-FBI Federal Government Personnel |

## Justifications for Specific Withholdings of Information

(13)    The paragraphs that follow explain the FBI's rationale for withholding each particular category of information described above.  A review of this information will reveal that all material the FBI has withheld is exempt from disclosure pursuant to FOIA Exemption 5 and/or Exemption 6, or is otherwise so intertwined with protected material that segregation is not possible without revealing the underlying material the FBI is trying to protect.

(14)    In processing the documents referred by OIP, the FBI sought to achieve maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material.  No reasonably segregable, nonexempt portions were withheld from plaintiff.

### *Exemption 5 – Privileged Deliberative Process Information*

(15)    FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

(16)    Exemption 5 has been construed to exempt those documents or information normally privileged in the civil discovery context, including privileged deliberative process material.  The deliberative process privilege protects the internal deliberations of the government by insulating recommendations, analyses, opinions, and other non-factual information comprising the decision-making process.  In turn, Exemption 5 allows for the withholding of such privileged material – *i.e.*, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations.  Exemption 5 is predicated on the recognition that release of this privileged

5

information would inhibit the government's development of policy and stifle its decision-making process. Furthermore, exempting such documents from disclosure also protects against public confusion that might result from preliminary disclosure of opinions and information that do not, in fact, reflect the final views or policies of the FBI. The exemption and privilege together protect not only documents but also the integrity of the deliberative process itself where exposure of the process would result in harm. The FBI invokes Exemption 5 and the deliberative process privilege because FBI employees would hesitate to offer their candid and conscientious opinions to superiors or coworkers if they knew that their opinions of the moment might be made a matter of public record at some future date, and because such self-censorship would, in turn, degrade the quality of agency decisions by depriving the decision-makers of fully-explored options developed from robust debate.

**(b)(5)-1:**     **Internal Communication Concerning Recommendations by Agency Personnel**

(17)     Pursuant to Exemption 5, the FBI withheld part of an e-mail sent from the FBI's Polygraph Unit to RIDS. The e-mail is in response to an inquiry by RIDS as part of its processing of a FOIA request that plaintiff submitted to the FBI, in which RIDS sought the Polygraph Unit's assistance in searching for responsive records. The FBI withheld the Polygraph Unit's response to RIDS, which contained the Polygraph Unit's recommendations about where and how to search for responsive records. The e-mail predates the FBI's final decisions about where to search for responsive records and how to respond to plaintiff's request.

(18)     The withheld material consists of information reflecting the give-and-take of the deliberative processes of FBI personnel. In the course of processing FOIA requests, RIDS personnel communicate with each other and others within the FBI, seeking information, providing advice, and offering suggestions. Similarly, employees within the FBI provide advice

6

and offer suggestions to RIDS personnel related to the processing of FOIA requests.  That is the

case here, where RIDS sought input and assistance from the Polygraph Unit about searching for

records responsive to a FOIA request from plaintiff about polygraphs, and where the Polygraph

Unit offered its candid advice and recommendations about where and how to search for such

records.  This information is clearly deliberative.  It is also predecisional because it predates the

final disposition of plaintiff's FOIA request.  Thus, the FBI properly protected this information

from disclosure pursuant to FOIA Exemption 5.[3]

### *Exemption 6 – Clearly Unwarranted Invasions of Personal Privacy*

(19)    FOIA Exemption 6 exempts from disclosure "personnel and medical files and

similar files when the disclosure of such information would constitute a clearly unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular

person falls within the scope of Exemption 6.

(20)    In asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose information

appeared in this record.  The FBI then considered whether there was any public interest to be

served by disclosing this information.  For purposes of this analysis, a public interest exists if the

information would shed light on the FBI's performance of its statutory duties.  Personal

information is withheld when the individual's privacy interest outweighs any public interest, or

when no public interest exists at all.  In each instance where the FBI withheld information

pursuant to Exemption 6 in this case, it was determined that the individual's privacy rights

outweighed any public interest in disclosure.

### (b)(6)-1:        Names and/or Identifying Information of FBI Support Personnel

(21)    Exemption 6 has been asserted to protect the names and identifying information

---

[3] Category (b)(5)-1 has been cited on Bates-numbered page Sack/FBI-1.

of FBI support personnel who were responsible for, or who assisted with handling the processing

of plaintiff's FOIA request.  FBI support personnel, as individuals, have privacy interests in

being free from unnecessary, unofficial questioning as to the conduct of their duties, whether or

not they are currently employed by the FBI.  In contrast, there is no public interest to be served

by disclosing the identities of these employees to the public.  Because the existence of any

privacy interest necessarily prevails in the absence of any public interest, disclosure of this

information would constitute an unwarranted invasion of these employees' personal privacy.

Thus, the FBI properly withheld this information pursuant to FOIA Exemption 6.[4]

**(b)(6)-2:**      **Names and/or Identifying Information of Non-FBI Federal Government Personnel**

(22)    Exemption 6 also has been asserted to protect the names of non-FBI federal

government personnel.  Again, the relevant inquiry here is whether public access to this

information would violate a viable privacy interest enjoyed by these individuals and whether

there is a public interest in releasing their identities.  The rationale for protecting non-FBI federal

employees is the same as that for FBI employees, supra.  Like FBI employees, these employees

have legitimate privacy interests in not having their identities disclosed.  In contrast, the FBI

determined that there is a complete lack of a *bona fide* public interest in this information because

its disclosure will not shed light on the operations and activities of the federal government.

Accordingly, the FBI has concluded that the disclosure of this information would constitute a

clearly unwarranted invasion of these employees' personal privacy interests.  Thus, the FBI has

properly withheld this information pursuant to Exemption 6.[5]

---

[4]  Category (b)(6)-1 has been cited on Bates-numbered pages Sack/FBI-1, 2, and 4.

[5]  Category (b)(6)-2 has been cited on Bates-numbered page Sack/FBI-1.

## PART II – DODIG CONSULTATION REQUESTS

### DODIG Consultation Correspondence

(23)   By letter dated October 24, 2011, plaintiff made a FOIA request to the Department of Defense ("DOD") for "records relating to the use of polygraphs by DOD components." **(See Exhibit D.)**

(24)   By letter dated December 6, 2012, the DODIG consulted with the FBI about the disposition of a 180-page report that contained FBI information and/or information in which the FBI has equities.  In conjunction with this consultation request, the DODIG provided the FBI a copy of plaintiff's October 24, 2011 FOIA request. **(See Exhibit D.)**

(25)   The FBI assigned FOIPA request number 1204486-000 to this consultation request.

(26)   By letter dated February 28, 2013, the FBI responded to the DODIG.  The FBI's letter advised the DODIG to withhold certain FBI information pursuant to FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E). **(See Exhibit E.)**

(27)   By e-mail dated January 30, 2013, the DODIG consulted with the FBI about the disposition of an additional 35 pages of material related to the report at issue in the DODIG's previous consultation request and containing FBI information and/or information in which the FBI has equities.  In conjunction with this consultation request, the DODIG provided the FBI a copy of plaintiff's October 24, 2011 FOIA request. **(See Exhibit F.)**

(28)   The FBI assigned FOIPA request number 1208047-000 to this consultation request.

(29)   By letter dated February 21, 2013, the FBI responded to the DODIG.  The FBI's letter advised the DODIG to withhold certain FBI information pursuant to FOIA Exemptions 1, 3, 6, 7(C), and 7(E).  Additionally, the FBI recommended that the DODIG forward the records to

certain other government agencies for review of their equities in the documents.

(See Exhibit G.)  Following DODIG's consultation with other agencies, the FBI re-processed

the material based upon the consultation decisions, and responded to the DODIG by letter dated

April 12, 2013.  The FBI advised the DODIG to continue to withhold certain FBI information

pursuant to FOIA Exemptions 1, 3, 6, 7(C), and 7(E).  (See Exhibit H.)

### Justifications for Withholdings of Specific Information

(30)   In responding to the DODIG's consultation requests, the FBI reviewed the

documents provided by the DODIG, totaling approximately 215 pages.  DODIG Bates numbered

the pages sequentially as DoD OIG 000001 through DoD OIG 000180, and DoD OIG 000445

through DoD OIG 000479.  Following its review, the FBI asked that the DODIG protect certain

information originating from the FBI, or in which the FBI has equities, pursuant to Exemptions

1, 3, 6, 7(C), 7(D), and 7(E) to prevent the release of classified information and information

protected from disclosure by statute; to protect individuals' privacy interests from unwarranted

invasion; to protect the identity of a confidential source; and to protect sensitive law enforcement

techniques.  See 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  We

have described the withheld information in this declaration with as much detail as possible

without identifying the very material that the FBI seeks to protect.  This declaration is limited to

providing the FBI's justifications for the withholding of information on those pages.

(31)   The FBI reviewed the documents that are the subject of the DODIG's consultation

request with an eye toward achieving maximum disclosure consistent with the access provisions

of the FOIA.  Every effort was made by the FBI to provide plaintiff with all material in the

public domain and with all reasonably segregable portions of releasable material.  The FBI did

not recommend that the DODIG withhold any reasonably segregable, nonexempt information

from plaintiff.

(32)     Because this was a consultation request, rather than a referral for a direct response to the plaintiff, the DODIG assumed responsibility for the final response to plaintiff, incorporating the withholdings requested by the FBI and any other agencies with whom the DODIG consulted.  Consequently, the FBI is not attaching the DODIG documents to this declaration (as we did with the OIP referral documents).  The FBI has, however, categorized the types of information it asked DODIG to withhold and has identified the Bates-numbered pages containing each specific category of protected information.

(33)     The categorized exemptions corresponding to the information that the FBI asked the DODIG to withhold are set forth as follows:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(1)** | **CLASSIFIED INFORMATION** |
| (b)(1) | Classified Information/Intelligence Activities, Sources, Methods |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUE** |
| (b)(3)-1 | National Security Act of 1947 - 50 U.S.C. § 403-1(i)(1) |
| **Categories (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED AND UNWARRANTED INVASIONS OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel |
| (b)(6)-2 and (b)(7)(C)-2 | Name and/or Identifying Information of Third Party of Investigative Interest |
| (b)(6)-3 and (b)(7)(C)-3 | Names and/or Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-4 and (b)(7)(C)-4 | Identifying Information of a Third Party who Provided Information to the FBI  (Cited in conjunction with (b)(7)(D)-1) |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE INFORMATION** |
| (b)(7)(D)-1 | Identifying Data and/or Information Provided by an Individual Under an "Implied" Assurance of Confidentiality (Cited in conjunction with (b)(6)-4 and (b)(7)(C)-4.) |
| **Category (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | Investigative Techniques and Procedures |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **(b)(7)(E) -2** | Dates and Types of Investigations (Preliminary or Full Field Investigations) |
| **(b)(7)(E)-3** | Polygraph Information |

### *Exemption 1 – Classified Information*

(34)    Exemption 1 protects from disclosure information that is "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national or foreign policy; and (B) are in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 552(b)(1).[6]

(35)    E.O. 13,526 (12/29/09) is the current Executive Order governing the classification and protection of information that affects the national security – *i.e.*, "the national defense or foreign relation of the United States." See E.O. 13,256, § 6.1(cc). I am bound by the requirements of E.O. 13,526 when making classification determinations.

(36)    Before I consider an Exemption 1 claim for withholding agency records, I must determine whether the information was properly classified – *i.e.*, that the substantive and procedural requirements and criteria of E.O. 13,526 were satisfied.

(37)    For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption 1, the information must meet the following requirements set forth in E.O. 13,526, § 1.1(a):

> (1)    an original classification authority is classifying the information;
>
> (2)    the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3)    the information falls within one or more of the categories of

---

[6]  Category (b)(1) has been cited on the following Bates-numbered pages:  DoD OIG-22, 28, 43, 47-49, 51-59, 63-73, 77-87, 113, 118-121, 130, 173, 177, 445, 448-450, 453-455, 457-458, 471-475, and 477-478.

information listed in § 1.4 of this order; and

(4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(38)     With these requirements in mind, I determined that the information the FBI protected pursuant to Exemption 1 is properly classified.[7] The information in the DODIG consultation records is owned by or was produced by, and is under the control of the United States Government.  The information pertains to "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  See E.O. 13,256, § 1.4(c).  Disclosure of this information reasonably could be expected to result in damage to the national security. Specifically, the consultation records contain information that reasonably could be expected to cause damage to the national security, and is marked as "Confidential."  The records also contain information that reasonably could be expected to cause serious damage to the national security, and is marked as "Secret."  Finally, the records contain information that reasonably could be expected to cause exceptionally grave damage to the national security, and is marked as "Top Secret."  See E.O. 13,256 § 1.2(a)(2).

(39)     In addition to ensuring that these substantive requirements were met, I also ensured that the procedural and administrative requirements of E.O. 13526 were followed. Specifically, I made certain that:

(1)     each document was marked as required and stamped with the proper classification designation;

(2)     each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13,526 § 1.5 (b);

---

[7]  As noted in paragraph 2, supra., I have been designated by the Attorney General as an original classification authority.

(3)     the prohibitions and limitations on classification specified in E.O. 13,526 § 1.7, were adhered to;

(4)     the declassification policies set forth in E.O. 13,526 §§ 3.1 and 3.3 were followed; and

(5)     any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 13,526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

(40)     In ensuring that the above substantive and procedural requirements were satisfied, I personally and independently examined the information withheld from plaintiff pursuant to FOIA Exemption 1. Based on my examination, as explained supra. in paragraphs 38 – 39 and infra. in paragraphs 41 – 51, I determined that the withheld information continues to warrant classification at the "Confidential," "Secret," and "Top Secret" levels, and as such, is exempt from disclosure pursuant to FOIA Exemption 1.

## (b)(1):     Intelligence Activities, Sources, and Methods

(41)     The classified information that the FBI protected pertains to intelligence activities, sources, and methods. E.O. 13,526, § 1.4(c) protects "intelligence activities (including covert action), intelligence sources or methods, or cryptology" from disclosure. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization determined to be of national security interest, and an intelligence method is any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics: first, the intelligence activity or method, as well as any information generated by it, is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions; and second, the activity or method must remain confidential if the viability, productivity, and usefulness of its information are to be preserved. The information withheld in these documents

pursuant to Exemption 1 was withheld to protect an intelligence method utilized by the FBI for gathering intelligence data.

(42)    The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; and/or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets.  The information obtained from the intelligence activities or methods is very specific in nature, was provided during a specific time period, and is known to very few individuals.

(43)    It is my determination that the disclosure of specific information describing the intelligence activities and methods withheld in this case, which are still used by the FBI today to gather intelligence information, could reasonably be expected to result in damage to the national security because:  (1) disclosure would allow hostile entities to discover the current intelligence gathering methods used; (2) disclosure would reveal specific targets of the FBI's national security investigations; and (3) disclosure would reveal the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations.  With the aid of this detailed information, hostile entities could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence gathering capabilities.  This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(44)    The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to result in damage to the national security:  (A) detailed intelligence activity information compiled regarding a specific

individual or organization of national security interest; (B) target of a foreign counterintelligence investigation; (C) character and/or title of case; (D) standard terminology/phraseology; and (E) code words. Below is a more detailed discussion of each of these categories.

(45)    **Detailed Intelligence Activities**. The classified information withheld on DoD OIG-28, 43, 47-49, 51-56, 63-73, 77-87, 113, 118-121, 177, 471-475, and 477 contains detailed intelligence activities information gathered or compiled by the FBI on a specific individual or organization of national security interest. The classified information about detailed intelligence activities on these pages was marked as "Confidential," "Secret," and/or "Top Secret." The disclosure of this information could reasonably be expected to cause damage ("Confidential"), serious damage ("Secret"), or exceptionally grave damage ("Top Secret") to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. Thus, this information is properly classified at the "Confidential," "Secret," and "Top Secret" levels, based on E.O. 13,526, § 1.4(c), and properly withheld pursuant to Exemption 1.

(46)    **Targets of Foreign Counterintelligence Investigation**. The classified information withheld on DoD OIG-22, 28, 48-49, 52, 54, 56-59, 63-73, 76-77, 81-85, 87, 113, 118, 120, 177, 471, and 473 identifies the target of an FBI foreign counterintelligence investigation. The classified information about this target was marked as "Secret" and "Top Secret." The disclosure of this information could reasonably be expected to cause serious damage ("Secret") or exceptionally grave damage ("Top Secret") to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific

16

target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. It is my determination that the release of this information could permit hostile individuals and foreign governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This would severely disrupt the FBI's intelligence-gathering capabilities. Thus, this information is properly classified at the "Secret" and "Top Secret" levels based on E.O. 13,526, § 1.4(c), and properly withheld pursuant to Exemption 1.

(47)   **Character and/or Title of Case**.  The classified information withheld on DoD OIG-445, 448, 453, 458, and 478 identifies the character and/or title of the case for a specific type of intelligence activity directed at a specific target of national security interest. The classified information about the character and/or title of the case was marked as "Secret." Disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation; and (c) reveal the manner of acquisition of the intelligence or counterintelligence information. Thus, this information is properly classified at the "Secret" level based on E.O. 13,526, § 1.4(c), and properly withheld pursuant to Exemption 1.

(48)   **Standard Terminology/Phraseology**.  The classified information withheld on DoD OIG-52-54, 63, 70-72, 84, and 87 contains standard terminology or phraseology that appears in the most recent FBI investigations. The classified standard terminology and phraseology was marked as "Secret." Disclosure of this information will reveal the scope and

depth of the FBI's efforts in a particular intelligence matter. Stated another way, disclosure will reveal the limitations of the FBI's efforts in a particular investigation or the amount of resources or efforts that the FBI is willing to expend on this particular matter. This allows a target to determine what information has been learned concerning him/her and what additional steps may be expected. If the information described by this phraseology is shallow, yet the subject is heavily involved in matters under investigation, it alerts the subject to the fact that his/her activities may continue without fear of detection. Conversely, if the information is substantial, it will prompt the subject to alter his/her course of conduct. Although these results may not occur in the narrow context of this case, the results described are likely to occur if information of this nature is routinely released. Thus, this information is properly classified at the "Secret" level based on E.O. 13,526, § 1.4(c), and properly withheld pursuant to Exemption 1.

(49)   **Code Words**. The classified information withheld on DoD OIG-55-59, 63, 65-72, 82-87, 113, 130, 173, 177, 445, 448-450, 453-455, 457, and 478 consists of code words that have never been publicly revealed and which, if disclosed, will reveal specific intelligence activities or methods of continuing value to the FBI in its ongoing investigations. Code words are unique and assigned solely to one particular intelligence subject. They are used in lieu of the actual name, description, and information concerning a specific investigation of national security interest. The withheld code words are sensitive and synonymous with on-going investigations that are still active today in collecting intelligence information. Public disclosure of a code word will allow a hostile analyst, or one not privileged to this code word, to patch bits and pieces of information together until the actual use of this application can be determined. In addition, the disclosure of a code word will inform hostile intelligence of the possible range of our intelligence capabilities, as well as the probable intelligence that the FBI has gathered, or can

collect, concerning them. This information is properly classified at the "Secret" level based on E.O. 13,526, § 1.4(c), and properly withheld pursuant to Exemption 1.

(50)     The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information, either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined.

(51)     In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause damage, serious damage, or exceptionally grave damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority to designate that information as classified in the interest of national security, and invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the justifications for the withheld classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by other hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to information relating to foreign activities and intelligence sources and methods of the United States could reasonably be expected to jeopardize the national security of the United States.

***Exemption 3 – Information Protected By Statute***

(52)     Exemption 3 exempts from disclosure information that is specifically exempted from disclosure by any statute that "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Review of the application of Exemption 3 statutes consists solely of determining that the statute relied upon qualifies as an Exemption 3 statute and that the information withheld falls within the scope of the statute.

**(b)(3)-1:**        **National Security Act of 1947, 50 U.S.C. § 403-1(i)(1)**

(53)     Exemption 3 was asserted to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 403-1(i)(1), which provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." On its face, this federal statute leaves no discretion to the DNI, which acts through agencies in the Intelligence Community, about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 403-1(i)(1) is absolute. See CIA v. Sims, 471 U.S. 159 (1985).

(54)     In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. §§ 403-1(i)(2)(A), (B). FBI is one of 17 member agencies comprising the IC, and as such must protect

20

intelligence sources and methods.

(55)    As described above, Congress enacted the NSA, as amended by the IRTPA, to

protect the IC's sources and methods of gathering intelligence.  Disclosure of such information

presents the potential for individuals to develop and implement countermeasures, which would

result in the loss of significant intelligence information, relied upon by national policymakers

and the IC.  I have determined that the IC's intelligence sources and methods would be revealed

if information about any of the FBI's intelligence sources and methods in the DODIG

consultation documents were disclosed to plaintiff, and thus, that the FBI is prohibited from

disclosing the information under 50 U.S.C. § 403-1(i)(1).  Thus, this information was properly

withheld pursuant to Exemption 3, based on 50 U.S.C. § 403-1(i)(1).[8]

### *Exemptions 6 and 7(C) – Unwarranted Invasions of Personal Privacy*

(56)    Exemption 6 exempts from disclosure "personnel and medical files and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within

the scope of Exemption 6.

(57)    Exemption 7(C) exempts from disclosure "records or information compiled for

law enforcement purposes [when disclosure] could reasonably be expected to constitute an

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).[9]  Before an agency can

invoke Exemption 7, it must first demonstrate that the records or information at issue were

---

[8]  The FBI asserted Exemption 3 and 50 U.S.C. § 403-1(i)(1) to withhold information on the following Bates-numbered pages:  DoD OIG-9, 22, 28, 43, 47-49, 51-59, 63-73, 76-87, 113, 118-121, 130, 173, 177, 445, 448-450, 453-455, 458, 471-475, and 477-478.  This information was also withheld pursuant to Exemption 1.

[9]  The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).  Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under both exemptions.

compiled for law enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duties of that agency.  The DODIG's consultation requests concerned a report and working papers that were compiled in relation to a specific national security investigation.  Accordingly, the information readily meets the threshold requirement of Exemption 7.

(58)    When withholding information pursuant to these exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  In asserting this exemption, the FBI first scrutinized each item of information to determine the nature and strength of the privacy interest of every individual whose information appears in the documents at issue.  The FBI then considered whether there was any public interest to be served by disclosing this information.  For purposes of this analysis, a public interest exists if the information would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  Personal information is withheld when the individual's privacy interest outweighs any public interest, or when no public interest exists at all.  In each instance where information was withheld pursuant to Exemptions 6 and 7(C) in this case, the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

### (b)(6)-1:    Names/Identifying Information of FBI Special Agents and Support Personnel (b)(7)(C)-1

(59)    Exemptions 6 and 7(C) have been asserted to protect the names and identifying information of FBI Special Agents ("SAs") and support personnel.  The FBI invoked these

exemptions to protect FBI SAs and support personnel, as individuals, whether or not they are currently employed by the FBI, from unnecessary, unofficial questioning about the specific case at issue in the records, as well as investigative techniques and procedures utilized by the FBI.

(60)     FBI SAs conduct official inquiries into violations of various criminal statutes and national security cases. They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. It is possible for an individual targeted by such law enforcement actions to carry a grudge that may last for years, and to seek revenge on the agents involved in a particular investigation. The publicity associated with the release of an agent=s identity in connection with a particular investigation could trigger hostility toward a particular agent. Conversely, the identities of particular SAs here would not shed light on the FBI's performance of its law enforcement duties, and so there is no public interest to be served by disclosing their identities to the public. Thus, after conducting the balancing test under Exemptions 6 and 7(C), the FBI concluded that these SAs' personal privacy interests must prevail and accordingly withheld the information about them.

(61)     The names of FBI support personnel are also withheld pursuant to FOIA Exemptions 6 and 7(C). These employees were assigned to handle tasks related to the national security investigation at issue in the DODIG consultation records. They were, and possibly are, in a position to access information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. These individuals maintain substantial privacy interests in not having their identities disclosed. Conversely, disclosure of their identities would shed no light on the activities of the FBI. Thus, the FBI concluded that disclosure of this information would

constitute a clearly unwarranted invasion of personal privacy under Exemption 6 and could

reasonably be expected to constitute an unwarranted invasion of personal privacy under

Exemption 7(C).

(62)    As demonstrated above, therefore, the FBI properly protected information about

its SAs and support personnel pursuant to Exemptions 6 and 7(C).[10]

### (b)(6)-2:      Name/Identifying Information of Third Party of Investigative Interest
### (b)(7)(C)-2

(63)    Exemptions 6 and 7(C) have been asserted to withhold the name and identifying

information of an individual who was of investigative interest to the FBI because of his/her

criminal activities.  Disclosure of the identity of this individual could subject him/her to

harassment, embarrassment, and could cause him/her undue public attention.  Thus, the privacy

interests in non-disclosure of this third party's information are very strong.  In contrast, there is

limited, if any public interest to be served by disclosure of this information.  Accordingly, the

FBI concluded that the disclosure of the identity of, and information about, this individual would

constitute a clearly unwarranted invasion of personal privacy under Exemption 6 and could

reasonably be expected to constitute an unwarranted invasion of his/her personal privacy under

Exemption 7(C).  The FBI, therefore, has properly withheld this information.[11]

### (b)(6)-3:      Names/Identifying Information of Non-FBI Federal Government Employees
### (b)(7)(C)-3

(64)    Exemptions 6 and 7(C) have been asserted to withhold the names and identifying

information of employees of other Federal agencies appearing in the DODIG consultation

documents.  Disclosure of the identities of these individuals could subject them to unauthorized

---

[10]  Category (b)(6)-1 and (b)(7)(C)-1 has been cited on Bates-numbered pages: DoD OIG-164, 178, 445, 448-449, 453-454, 458, 469-471, 473, 476, and 478.

[11]  Category (b)(6)-2 and (b)(7)(C)-2 has been cited on Bates-numbered pages: DoD OIG-445, 448, 453, 458, and 469-478.

inquiries and harassment as these individuals are in a position to have access to information regarding an official national security investigation. The substantial privacy interest in not having their identities revealed, when balanced against the non-existent public interest in disclosure, caused the FBI to protect these employees' names to prevent a clearly unwarranted of their personal privacy interests under Exemption 6 and an unwarranted invasion of their personal privacy interests under Exemption 7(C). Accordingly, the FBI properly protected this information.[12]

**(b)(6)-4:**           **Identifying Information of Third Party Who Provided Information to the FBI**
**(b)(7)(C)-4**

(65)    Exemptions 6 and 7(C) have been asserted, in conjunction with Exemption 7(D), to protect the identifying information of an individual who provided information to the FBI. The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The FBI's experience has shown that individuals interviewed by the FBI fear that their identity may be exposed and, consequently, that they could be harassed, intimidated, or threatened with legal consequences, economic reprisal, or possible physical harm. To surmount these fears, individuals interviewed by the FBI must be assured that their names and personally-identifying information will be held in the strictest of confidence. With this in mind, the FBI concluded that the third party interviewee whose information appeared in the DODIG consultation records had significant privacy interests in this information. In contrast, there is no public interest in this information because disclosure of this person's identity would shed no light on the operations and activities of the FBI. Accordingly, the FBI concluded that the disclosure of this information would constitute a clearly unwarranted of this person's personal privacy under Exemption 6 and could

---

[12] Category (b)(6)-3 and (b)(7)(C)-3 has been cited on Bates-numbered page DoD OIG-469.

constitute an unwarranted invasion of his/her personal privacy under Exemption 7(C).  The FBI,

therefore, properly withheld this information pursuant to Exemptions 6 and 7(C), in conjunction

with Exemption 7(D) (*i.e.*, Category (b)(7)(D)-1).[13]

### *Exemption 7(D) – Confidential Sources*

(66)    Exemption 7(D) exempts from disclosure:

> records or information compiled for law enforcement purposes [when disclosure]
> could reasonably be expected to disclose the identity of a confidential source,
> including a state, local or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

(67)    Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common meaning of the term.  Some of these sources provide

information under an express assurance of confidentiality.  Other individuals are interviewed

under circumstances from which assurances of confidentiality can reasonably be inferred; these

individuals are considered to be confidential sources because they furnished information only

with the understanding that their identities and the information provided will not be released

outside the FBI.  Information provided by these individuals is singular in nature, and if released,

could reveal their identities.

### (b)(7)(D)-1:    Identifying Data and/or Information Provided by an Individual Under an Implied Assurance of Confidentiality

(68)    Exemption 7(D) has been asserted, in conjunction with Exemptions 6 and 7(C)

(*i.e.*, Category (b)(6)-4 and (b)(7)(C)-4), to protect identifying information about and

information provided by a third party under an implied assurance of confidentiality.

---

[13]  Category (b)(6)-4 and (b)(7)(C)-4 has been cited on Bates-numbered page DoD OIG-59.

(69)     The FBI has withheld information that could clearly identify the confidential source. The sensitivity of the information and the position of the source are such that it may be inferred that he/she provided information to the FBI with the expectation of confidentiality. This source provided valuable information that is detailed and singular in nature. As discussed earlier, the disclosure of the identity of this individual is in direct contradiction to the interests of the FBI. If the FBI were forced to disclose the identity of – and information provided by – this confidential source, such disclosure would have a chilling effect on the activities and cooperation of this and other future FBI confidential sources. For the reasons described above, the FBI has properly withheld information that could reasonably be expected to identify this confidential source pursuant to Exemption 7(D), in conjunction with Exemptions 6 and 7(C).[14]  The FBI recommended withholding only so much information as necessary to protect the source's identity.

### Exemption 7(E) – Investigative Techniques and Procedures

(70)     Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

**(b)(7)(E)-1:    Investigative Techniques and Procedures**

(71)     Exemption 7(E) has been asserted to protect certain procedures and techniques used by FBI agents to conduct national security investigations that are reflected in the DODIG consultation documents. Disclosure of this information could enable subjects of FBI investigations to circumvent these and similar techniques and procedures that are currently used

---

[14]  Category (b)(7)(D)-1 has been cited on Bates-numbered page DoD OIG-59.

by law enforcement. The relative benefit of these techniques and procedures could be diminished if the actual techniques and procedures referenced in these records were revealed. This in turn could facilitate the accumulation of information by other investigative subjects regarding the circumstances under which these techniques and procedures are used or requested and the value of the information obtained. Furthermore, release of information about the techniques and procedures reflected in the records could enable criminals to educate themselves about how law enforcement locates and apprehends individuals. This information could allow these investigative targets to take countermeasures to circumvent the effectiveness of these techniques and procedures, and to continue to violate the law. Thus, the FBI properly protected this information from disclosure pursuant to FOIA Exemption 7(E).[15]

**(b)(7)(E)-2:**     **Dates and Types of Investigations (Preliminary or Full Investigation)**

(72)     Exemption 7(E) has been asserted to protect information about the type and dates of the investigation referenced in the DODIG consultation records. Specifically, the information withheld, when referenced in connection with an actual investigation and not in general discussion, pertains to the type of investigation, whether it is a Preliminary or a Full investigation, and the date it was initiated. Release of this information would allow individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary investigation and the particular date which it covers, causing individuals to adjust their behavior accordingly. Moreover, the knowledge that a specific activity warrants investigation could likewise cause individuals to adjust their behavior to avoid detection. Because release of this information could reasonably be expected to impede the FBI's effectiveness and potentially aid circumvention of the law, the FBI has properly withheld the information pursuant to Exemption

---

[15] Category (b)(7)(E)-1 has been cited on the following Bates-numbered pages:  DoD OIG-9, 471-472, and 474-477.

7(E).[16]

### (b)(7)(E)-3:    Polygraph Material

(73)     Exemption 7(E) has been cited to withhold the numerical ratings on polygraph charts.  The FBI is also withholding the make, model, and serial number of the polygraph machine identified in the records because it is utilized on a recurring basis during the course of criminal and national security investigations conducted by the FBI.  Finally, the FBI is withholding the type and series of tests given to the potential suspect.  While it is generally known that law enforcement agencies use polygraph examinations as an investigative tool, these details about the use of the technique are not generally known to the public.

(74)     To release this polygraph information would enable criminals and others who could be a threat to national security to educate themselves about the capabilities of such equipment, and, consequently, take countermeasures to defeat the effectiveness of the polygraph and impede future investigations.  Additionally, the protection of such information from disclosure increases the difficulty for potential examinees to attempt to employ countermeasures, thus making the use of countermeasures easier for the polygraph examiner to detect.

(75)     Even though there are publications which deal solely with polygraph techniques, none of them specifically address the various procedures and intricacies of the examination process sufficiently to permit someone to learn how the techniques are actually implemented by the FBI.  Therefore, the FBI properly protected this information pursuant to FOIA Exemption 7(E).[17]

---

[16] Category (b)(7)(E)-2 has been cited on Bates-numbered pages:  DoD OIG-12, 52, 64, 72, 91, 106, 110, 112, 115, 143, 445, 448, 453, 458, 469, and 478.

[17] Category (b)(7)(E)-3 has been cited on Bates-numbered page DoD OIG-473.

**DOCUMENTS REFERRED TO THE DEFENSE INTELLIGENCE AGENCY**

(76)     As part of its processing of records referred by DODIG, the FBI identified

information belonging to the Defense Intelligence Agency ("DIA"). These documents consist of

both FBI documents containing DIA equities and DIA-originated documents – some of which

contain FBI equities. The DODIG contacted the DIA to determine how they wanted the FBI to

treat their information contained within the responsive documents. [18] By e-mails dated April 1,

2013 and April 5, 2013, DIA instructed the FBI to withhold information pursuant to Exemptions

(b)(1), (b)(3), (b)(6), and (b)(7)(E). FBI pages that contain DIA equities are located at DoD IG-

000445-000446, 000448, 000478-000453, 000458-000459, and 000469-000477. DIA-originated

documents are located at DoD IG-000447, 000449-000477, 000454-000457, and 000460-

000468. The DIA's justification of deletions contained in these documents has been justified

elsewhere.

**CONCLUSION**

(77)     The FBI processed the four pages of records referred by OIP, released to plaintiff

all reasonably segregable information contained within the records, and properly withheld

information from the records pursuant to FOIA Exemptions 5 and 6.

(78)     The FBI reviewed and responded to DODIG's consultation requests, properly

asserted FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E) to protect FBI information reflected in

the DODIG consultation documents, and advised the DODIG of its withholding determinations.

---

[18] Typically, the FBI would have referred these pages to DIA. However, DODIG offered to handle all referrals that related to these documents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that Exhibits A through H attached hereto are true and correct copies.

Executed this _____ day of April, 2013.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KATHRYN SACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-00244-RLW |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit A



**U.S. Department of Justice**

Office of Information Policy

---

*Telephone: (202) 514-3642*          *Washington, D.C. 20530*

MEMORANDUM                                      MAR 1 3 2012

TO:        David M. Hardy, Chief
           Record/Information Dissemination Section
           Records Management Division
           Federal Bureau of Investigation

FROM:      Vanessa R. Brinkmann
           Counsel, Initial Request Staff

SUBJECT:   Freedom of Information Act (FOIA) Request of Kel McClanahan, On Behalf of
           Katelyn Sack, for All Records Related to the Processing of All FOIA Appeals
           Submitted by Katelyn Sack; OIP No. OIP/ 11-00921 (F)

        This concerns the above-referenced FOIA request which was received by this Office. For
your information, pursuant to discussion between this Office and the requester, this request was
narrowed as described above. **Please be advised that these documents are the subject of
litigation in the District of Columbia District Court, <u>Sack v. Central Intelligence Agency, et.
al., 12-cv-00244 (EGS).</u>**

        Attached are two documents, totaling three pages, which originated with your Office. The
first document (OIP-13), totaling two pages, consists of internal notes pertaining the Federal Bureau
of Investigation's (FBI) processing of a FOIA request submitted by Ms. Sack. The second document
(OIP-14), totaling one page, is an FBI RMD FOIPA Search Slip used during the processing of Ms.
Sack's FOIA request. These documents were located in our review of the Office of Information
Policy (OIP) Administrative Appeal file of Ms. Sack; however, these documents contain no direct
OIP equity. Accordingly, we are referring these documents to your Office for direct response to the
requester, who has been notified of this referral. Please furnish this Office with a copy of your final
response.

        You may forward your response to the following address: Office of Information Policy, U.S.
Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001,
Attention: ██████████ or email ██████████████████.

        Please note that the number on the bottom right-hand corner on the documents is for
administrative purposes only and was not on the original documents.

        Copies of the requester's initial letter and the documents are attached. If you have any
questions regarding this matter, please call ██████████ of this Office at ██████████.

Attachments
VRB:DRH:VAV

FRCP 5.2
LCR 5.4(f)

# NATIONAL SECURITY COUNSELORS

1200 SOUTH COURTHOUSE ROAD
SUITE 124
ARLINGTON, VA 22204

———

TELEPHONE: (301) 728-5908
FACSIMILE: (240) 681-2189

RECEIVED

JUL 0 5 2011

Office of Information Policy

KEL MCCLANAHAN, ESQ., EXECUTIVE DIRECTOR (admitted in NY, DC)
   EMAIL: KEL@NATIONALSECURITYLAW.ORG
BRADLEY P. MOSS, ESQ., DEPUTY EXECUTIVE DIRECTOR (admitted in IL, DC)
   EMAIL: BRAD@NATIONALSECURITYLAW.ORG

5 July 2011

Carmen Mallon
Chief of Staff
Office of Information Policy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, NW
Washington, DC 20530-0001

Re:   FOIA/PA Request – FOIA Appeal Processing Notes

Dear Ms. Mallon:

      This is a request on behalf of my client Katelyn Sack under the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and the Privacy Act, 5 U.S.C. § 552a, *et seq.*, for a copy
of **all Department of Justice ("DOJ") Office of Information Policy ("OIP") records related
to the processing of all FOIA appeals submitted by her, including,** *but not limited to,* **Appeal
No. 2010-2171, by OIP. This includes, but is not limited to:**

   1.   **All pages and fields from your case tracking system; and**
   2.   **All correspondence, including email and secure messages, between U.S.
        government employees and/or contractors regarding the processing of this
        request.**

This request does *not* include any correspondence exchanged between OIP and Ms. Sack. Nor
does it include any records that were responsive to any of Ms. Sack's previous FOIA requests.
Ms. Sack is to be considered the only requester for your administrative purposes; National
Security Counselors is *not* to be considered a requester. I have attached a signed authorization
form to this effect.

      When processing this request, please note that the DC Circuit has previously held that
agencies have a duty to construe the subject material of FOIA requests *liberally* to ensure
responsive records are not overlooked. *See Nation Magazine, Washington Bureau v. U.S.
Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). Accordingly, you are hereby instructed that
the term "record" includes, *but is not limited to:* 1) all email communications to or from any
individual within your agency; 2) memoranda; 3) inter-agency communications; 4) sound

recordings; 5) tape recordings; 6) video or film recordings; 7) photographs; 8) notes; 9) notebooks; 10) indices; 11) jottings; 12) message slips; 13) letters or correspondence; 14) telexes; 15) telegrams; 16) facsimile transmissions; 17) statements; 18) policies; 19) manuals or binders; 20) books; 21) handbooks; 22) business records; 23) personnel records; 24) ledgers; 25) notices, 26) warnings; 27) affidavits; 28) declarations under penalty of perjury; 29) unsworn statements; 30) reports; 31) diaries; or 32) calendars, regardless of whether they are handwritten, printed, typed, mechanically or electronically recorded or reproduced on any medium capable of conveying an image, such as paper, CDs, DVDs, or diskettes. Furthermore, in line with the guidance issued by DOJ on 9 September 2008 to all federal agencies with records subject to FOIA, agency records that are currently in the possession of a U.S. Government contractor for purposes of records management remain subject to FOIA. Please ensure that your search complies with this clarification on the effect of Section 9 of the OPEN Government Act of 2007 of the definition of a "record" for purposes of FOIA. In addition, OIP should not limit the search to DOJ-originated records or exclude correspondence sent to outside third parties. Similarly, we request that all documents be reviewed in their entirety, and that no information be omitted on the grounds of "non-relevance."

If you deny all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out." In addition, we draw your attention to President Obama's 21 January 2009 *Memorandum for the Heads of Executive Departments and Agencies*, directing federal agencies to adopt a presumption in favor of disclosure and stating that government information should not be kept confidential "merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears." To permit us to reach an intelligent and informed decision whether or not to file an administrative appeal of any denied material, please describe any withheld records (or portions thereof) and explain the basis for your exemption claims. This description should include a list of the withheld documents, pursuant to *Shermco Indus. v. Sec'y of the U.S. Air Force*, 452 F. Supp. 306, 317 n.7 (N.D. Tx. 1978) ("A person cannot effectively appeal a decision about the releasability of documents . . . if he is not informed of at least a list of the documents to which he was denied access . . . and why those decisions were made. Denial of this information would in all likelihood be a violation of due process as well as effectively gutting the reasons for applying the exhaustion doctrine in FOIA cases.").

Ms. Sack is a representative of an educational institution. She is a Ph.D. candidate and President's Fellow at the University of Virginia, Woodrow Wilson Department of Politics. She intends to utilize any responsive records in her research into polygraph bias and present her results in a publicly available form. Her Department has stipulated that she is to be treated as a representative of the university. I have attached a letter to that effect.

Because of the low number of responsive records Ms. Sack expects you to find in your search, she does not expect that a request for a public interest fee waiver is called for at this time. If you find that you will be releasing more than 100 pages of responsive records, please contact me and I will provide you with an appropriate fee waiver request at that time.

I also specifically state for the record Ms. Sack's unwillingness to pay any fees for this request. Please do not delay the processing of this request by needlessly requesting further confirmation of this unwillingness to pay fees or terminate the processing of this request for failure to provide you with such confirmation. This statement is a full and unequivocal refusal to pay *any* fees for this request.

Please ensure that, in accordance with the DC Circuit's ruling in *Chambers v. Dep't of the Interior*, 568 F.3d 998 (D.C. Cir. 2009), all records potentially responsive to this FOIA request are immediately preserved from destruction until the final resolution of this FOIA action. Destruction of potentially responsive records after the receipt of a FOIA request is considered "contumacious conduct" by the DC Circuit. *See id.* at 1004.

The DOJ is required by law to respond to this request within 20 working days. Failure to timely comply may result in the filing of a civil action against your agency in a United States District Court.

Please provide any records produced in response to this request in electronic (soft-copy) form. Please provide soft-copy records by email or on a CD if email is not feasible. However, Ms. Sack does not agree to pay an additional fee to receive records on a CD, and in the instance that such a fee is required, she will accept a paper copy of responsive records.

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me.

Sincerely,

Kel McClanahan

## AUTHORIZATION AND PRIVACY WAIVER

I, Katelyn Sack, hereby authorize the law firm National Security Counselors and any attorney associated with it (collectively "my attorneys") to file Freedom of Information Act ("FOIA") requests on my behalf with any agency of the United States government.  I also authorize any agency of the United States government to discuss any FOIA requests filed by me or on my behalf (collectively "my requests") with my attorneys.  A release to my attorneys shall be considered the legal equivalent of a release to me.  A photocopy of this authorization shall have the same effect as the original.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

_____
Katelyn Sack

05-18-2011
Date

 UNIVERSITY *of* VIRGINIA

WOODROW WILSON DEPARTMENT OF POLITICS
P.O. Box 400787
Charlottesville, VA 22904-4787
☎434 924 3192 (*fax:* 434 924 3359)

JEFFERY A. JENKINS
*Associate Professor & Director of Graduate Studies*
*Office Location:* Gibson Hall S 261
*Email:* jaj7d@virginia.edu

June 30, 2011

Re:  Fee category verification and fee waiver request support

To Whom It May Concern:

This letter verifies that Katelyn Sack's FOIA request to which it is attached falls into the "academic" fee category. Ms. Sack is a Ph.D. student and President's Fellow in Politics at the University of Virginia. She intends to review, evaluate, synthesize, and present the requested data, analyses, policies, protocols, and practices in a publically available, usable form. This intention is consistent with U.Va.'s scholarly research goals.

The University of Virginia Politics Department is an institution of graduate higher education which operates programs of scholarly research. Ms. Sack's request is on behalf of this institution, one of the primary aims of which is to explain contemporary political developments in a broad philosophical and historical context that sheds light on the long-term development of institutional structures that shape political behavior norms and public policies. Ms. Sack is acting as a representative of the University of Virginia Department of Politics, and you may consider the Department to be the requester for purposes of fee calculations.

This letter also supports Ms. Sack's request for a fee waiver, on the grounds that disclosure of the requested information will significantly contribute to public understanding of government operations and activities. Ms. Sack's graduate training qualifies her to extract, synthesize, and effectively convey the requested information to the public. Her research is of interest to the public at large, because bias in polygraphs is an under-explored phenomenon that affects millions of Americans.

Sincerely,

Jeffery A. Jenkins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN SACK,                            )
                                         )
    Plaintiff,                           )
                                         )
        v.                           )    Civil Action No. 12-cv-00244-RLW
                                         )
CENTRAL INTELLIGENCE AGENCY, et al.,     )
                                         )
    Defendants.                          )
                                         )

# Exhibit B

U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

April 24, 2012

MR. KEL MCCLANAHAN
SUITE 124
1200 SOUTH COURTHOUSE ROAD
ARLINGTON, VA 22204

Subject: POLYGRAPH BIAS

FOIPA No.  1187152- 000

Dear Mr. McClanahan:

      The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Deletions have been  made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision.  In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely.  The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | | ☐(b)(7)(C) |
| ☐(k)(1) | | |
| _____ | | ☐(b)(7)(D) |
| ☐(k)(2) | | |
| _____ | | ☒(b)(7)(E) |
| ☐(k)(3) | | |
| _____ | | ☐(b)(7)(F) |
| ☐(k)(4) | | |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

    **4**   page(s) were reviewed and **4**   page(s) are being released.

    ☐  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA].  This information has been:

        ☐ referred to the OGA for review and direct response to you.

        ☐                                    referred to the OGA for consultation.   The FBI will correspond with you regarding this                                    information when the consultation is finished.

        ☐ In accordance with standard FBI practice, this response neither confirms nor denies the

existence of your subject's name on any watch lists.

☒ You have the right to appeal any denials in this release.   Appeals should be directed in writing to the Director, Office of Information Policy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C.   20530-0001.   Your appeal must be received by OIP within sixty (60)

days

from the date of this letter in order to be considered timely.   The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information

Dissemination Section

Records Management Division

Enclosures (2)

This is in further response to your request to the Department of Justice - Office of Information Policy.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A)  requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if
such     disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the
life or     physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity     would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant     to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the     release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KATHRYN SACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-00244-RLW |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit C

FEDERAL BUREAU OF INVESTIGATION
FOIPA
NOTES SUMMARY INFORMATION SHEET

From:     To:     Subject: nothing in rts   Date: 02/04/10

b6 -1

Text:

From:     To:     Subject: sp acs search NR   Date: 02/04/10

Text:

From:     To:     Subject: FBI intranet search   Date: 02/04/10

Text: looked at 137 hits of polygraph bia on Intranet, nothing relevant for subject

From:     To:     Subject: need to address fee waiver request   Date: 02/04/10

Text:

From:     To:     Subject: email [ ]/polygraph unit contact   Date: 02/04/10

b6 -1

Text: Hi [ ]

I have something different to ask you this time. I have a requester Katelyn Sack who wrote
in for a FOIA request about FBI's research on polygraph bias, or studies done by Gordon Bar
land, former head of research division at the Dept of Defense Polygraph Institute(now DACA)
and or with Garland's employee Shelia Reed related work. Katelyn Sack is a PhD student at
UVA, independent writer, and film maker engaging in non-comercial educational ans scientifi
c research pertaining to the ploygraph.
Do you have such material as this or know how I could get this or who to contact?
Thanks so much for your help,

[ ]
Legal Administrative Specialist
RMD, RIDS, WPU1
Winchester, ICRC [ ]

b6 -1

From: [ ] To: [ ] Subject: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Date: 02/04/10

b6 -1

Text: Hello [ ]

[ ]

b5 -1
b6 -2

Thank you,

[ ]

From: [ ] (SecD) (FBI)
Sent: Thursday, February 04, 2010 10:19 AM
To: [ ] (SecD) (FBI)
Subject: FW: Polygraph bias

b6 -1

OIP-13

UNCLASSIFIED

Sack/FBI-1

NON-RECORD

Hey [____]

    I will come to see you in regards to this matter below:

Thanks

b6 -1

[____]
Management & Program Analyst
SECD/ISS/PU
(OFC)
(BB)
(FAX)

---

From: [____] (RMD)(FBI),
Sent: Thursday, February 04, 2010 10:16 AM
To: [____] (SecD) (FBI)
Subject:    Polygraph bias

b6 -1

UNCLASSIFIED
NON-RECORD

Hi [____]

I have something different to ask you this time. I have a requester Katelyn Sack who wrote in for a FOIA request about FBI's research on polygraph bias, or studies done by Gordon Bar land, former head of research division at the Dept of Defense Polygraph Institute(now DACA) and or with Garland's employee Shelia Reed related work. Katelyn Sack is a PhD student at UVA, independent writer, and film maker engaging in non-comercial educational ans scientifi c research pertaining to the ploygraph.
Do you have such material as this or know how I could get this or who to contact?
Thanks so much for your help,

[____]
Legal Administrative Specialist
RMD, RIDS, WPU1
Winchester, ICRC [____]

b6 -1

---

From: [____] To:     Subject: NR Letter approved  Date: 02/17/10

Text:

b6 -1

From: [____] To:    Subject: mailed nr letter, closed case  Date: 02/17/10

Text:

From: [____] To:    Subject: PIO CALL FROM REQUESTER - STATUS  Date: 05/24/10

Text: PIO received a call from requester on 5-24-10 @ 10:31 a.m. from #434-409-9670 advisin g that she mailed a request to RIDS on 1-21-10 reference Polygraph Bias and never received a response.

PIO verified that request was closed/NR letter on 2-16-10 and provided that information to

Sack/FBI-2

requester.   Requester advised that she never received the letter and requested a copy be m
ailed to her.   PIO verified that the address on the original letter is correct.

PIO mailed a copy of the "NR" letter to requester at:   111 David Terrace, Charlottesville,
VA. 22903-3723.

Sack/FBI-3

☐ Cross-References
✗ Main Files

## FBI RMD FOIPA SEARCH SLIP

·FOIPA# 114321

HQ ☒
FO ☐ _____

LAS: _____        ·Rm: _____        b6 -1

Subject: Polygraph Bias        SS#/FBI#: _____

Date of Birth: __/__/__   Place of Birth _____ Localities: _____

AKA(s) _____

_____

_____

_____

### Automated Indices

AKA(S) Continued on Back

Date Searched: 2/5/10

| BB | File | ID | C/P | File Order Date |
|----|------|----|----|-----------------|
|    | NR   |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |

### Inactive Indices

LAS: _____        Date: __/__/__

| BB | File | ID | C/P | File Order Date |
|----|------|----|----|-----------------|
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |

### Share Point

| BB | File | ID | C/P | File Order Date |
|----|------|----|----|-----------------|
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |
|    |      |    |    | /        /      |

OIP-14

Sack/FBI-4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KATHRYN SACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-00244-RLW |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit D

# TOP SECRET/SI/NF/MR



**INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
4800 MARK CENTER DRIVE
ALEXANDRIA, VIRGINIA 22350-1500

DEC − 6 2012

Ref: 12-00004-L

OCCL

MEMORANDUM FOR FEDERAL BUREAU OF INVESTIGATION
    CHIEF, RECORD/INFORMAITON DISSEMINATION SECTION,
    RECORDS MANAGEMENT DIVISION
    170 MARCEL DRIVE
    WINCHESTER, VA 22602-4843

SUBJECT: Freedom of Information Act Litigation Consultation – Katelyn Sack

    National Security Counselors, on behalf of their client, Katelyn Sack, has sued the
Department of Defense, Office of the Inspector General (DoD OIG), alleging that DoD OIG failed
to produce records responsive to a FOIA request.  During our search for records, we identified the
attached report, 05-INTEL-18, Bates stamped DoD OIG 000001-000180, which contains
information of interest to your office.  Accordingly, we are referring the report for your review and
response to this office.

    This report must be reviewed for final release determination under the FOIA and provided in
support of litigation.  The case is proceeding under a tight deadline established with the court.  If
you determine that the report requires review by other agencies, please inform this office rather than
send out the report for consultation.  This office will coordinate any other agency consultations.

    No later than February 14, 2013, please submit your agency's release determinations and
redacted documents to support your classification review, electronically through JWICS to ▮.
▮.  If your office determines that information should be
withheld, please provide a memo from your Initial Denial Authority detailing justification for any
exemptions claimed and if asserting exemption (b)(1), a declaration from the original classification
authority affirming that the information is currently and properly classified.  Also, as an additional
courtesy, please send unclassified notification when you have provided your response on JWICS, by
phone or NIPRNET e-mail to ▮ at ▮ or ▮ or me at
(703) 604-8758 or jeanne.miller@dodig.mil.

FRCP 5.2
LCR 5.4(F)

    A copy of the complaint and requester's initial FOIA request are attached for your
information.  If you have any questions regarding this consultation, please contact ▮ or
me.

                                                Jeanne Miller
                                        Chief, Freedom of Information and
                                            Privacy Office

Attachment(s):
As stated

# TOP SECRET/SI/NF/MR
## (UNCLASSIFIED WHEN SEPARATED FROM ATTACHMENTS)

# FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | 17036048325 |
| FROM | Kel McClanahan |
| DATE | 2011-10-24 18:24:08 GMT |
| RE | New FOIA request from Katelyn Sack |

## COVER MESSAGE

Please find attached a new FOIA request submitted on behalf of my client, Katelyn Sack.

—

This electronic mail (email) transmission is meant solely for the person(s) to whom it is addressed.  It contains confidential information that may also be legally privileged.  Any copying, dissemination or distribution of the contents of this email by anyone other than the addressee or his or her agent for such purposes is strictly prohibited.  If you have received this email in error, please notify me immediately by telephone or email and purge the original and all copies thereof.  Thank you.

Kel McClanahan, Esq.
Executive Director
National Security Counselors

"As a general rule, the most successful man in life is the man who has the best information."
Benjamin Disraeli, 1880

"Quis custodiet ipsos custodes?" ("Who watches the watchers?")
Juvenal, Satire VI

# NATIONAL SECURITY COUNSELORS

1200 SOUTH COURTHOUSE ROAD
SUITE 124
ARLINGTON, VA 22204
‒‒‒‒
TELEPHONE: (301) 728-5908
FACSIMILE: (240) 681-2189

KEL McCLANAHAN, ESQ., EXECUTIVE DIRECTOR (admitted in NY, DC)
    EMAIL: KEL@NATIONALSECURITYLAW.ORG
BRADLEY P. MOSS, ESQ., DEPUTY EXECUTIVE DIRECTOR (admitted in IL, DC)
    EMAIL: BRAD@NATIONALSECURITYLAW.ORG

                                                24 October 2011

Jeanne Miller
Chief, Freedom of Information & Privacy Office
Suite 1021
400 Army Navy Drive
Arlington, VA 22202-4704

Re:    FOIA Request – Polygraphs

Dear Ms. Miller:

        This is a request on behalf of my client Katelyn Sack under the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for a copy of all Department of Defense Office of the
Inspector General ("DODIG") records relating to the use of polygraphy by DOD
components. Ms. Sack is to be considered the only requester for your administrative purposes;
National Security Counselors is *not* to be considered a requester. I have attached a signed
authorization form to this effect.

        When processing this request, please note that the DC Circuit has previously held that
agencies have a duty to construe the subject material of FOIA requests *liberally* to ensure
responsive records are not overlooked. *See Nation Magazine, Washington Bureau v. U.S.
Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). Accordingly, you are hereby instructed that
the term "record" includes, *but is not limited to*: 1) all email communications to or from any
individual within your agency; 2) memoranda; 3) inter-agency communications; 4) sound
recordings; 5) tape recordings; 6) video or film recordings; 7) photographs; 8) notes; 9)
notebooks; 10) indices; 11) jottings; 12) message slips; 13) letters or correspondence; 14)
telexes; 15) telegrams; 16) facsimile transmissions; 17) statements; 18) policies; 19) manuals or
binders; 20) books; 21) handbooks; 22) business records; 23) personnel records; 24) ledgers; 25)
notices; 26) warnings; 27) affidavits; 28) declarations under penalty of perjury; 29) unsworn
statements; 30) reports; 31) diaries; or 32) calendars, regardless of whether they are handwritten,
printed, typed, mechanically or electronically recorded or reproduced on any medium capable of
conveying an image, such as paper, CDs, DVDs, or diskettes. Furthermore, in line with the
guidance issued by the Department of Justice on 9 September 2008 to all federal agencies with
records subject to FOIA, agency records that are currently in the possession of a U.S.
Government contractor for purposes of records management remain subject to FOIA. Please
ensure that your search complies with this clarification on the effect of Section 9 of the OPEN

Government Act of 2007 of the definition of a "record" for purposes of FOIA. In addition, the DOD should not limit the search to DOD-originated records or exclude correspondence sent to outside third parties. Similarly, we request that all documents be reviewed in their entirety, and that no information be omitted on the grounds of "non-relevance." Finally, please consider this letter an affirmative rejection of any limitation of your search to records created prior to the date of this request. To the contrary, we stipulate that this search should be restricted to records created prior to the date of the first substantive review of this request by DOD FOIA personnel (as opposed to the date that receipt of the request was acknowledged by the DOD).

Similarly, in light of the close relationship between the different Offices of Inspectors General in different DOD components, please refer this request to any of your sister offices which you believe may be likely to possess responsive records.

Lastly, the DOD is specifically prohibited from adopting an overbroad interpretation of the term "relating to" with respect to the scope of this request; an interpretation that "a request for all documents 'relating to' a subject is overbroad because all documents 'relate to' others in some remote fashion" is specifically rejected. Therefore, in conclusion, the DOD is hereby instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought. If, even given these restrictions, the DOD still determines that this request does not reasonably describe the records sought, it is instructed to contact me pursuant to 32 C.F.R. § 286.4(h)(1) to discuss reformulation of the request before rejecting the request as overbroad, vague, or unduly burdensome.

If you deny all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out." In addition, we draw your attention to President Obama's 21 January 2009 *Memorandum for the Heads of Executive Departments and Agencies*, directing federal agencies to adopt a presumption in favor of disclosure and stating that government information should not be kept confidential "merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears." To permit us to reach an intelligent and informed decision whether or not to file an administrative appeal of any denied material, please describe any withheld records (or portions thereof) and explain the basis for your exemption claims. This description should include a list of the withheld documents, pursuant to *Shermco Indus. v. Sec'y of the U.S. Air Force*, 452 F. Supp. 306, 317 n.7 (N.D. Tx. 1978) ("A person cannot effectively appeal a decision about the releasability of documents . . . if he is not informed of at least a list of the documents to which he was denied access . . . and why those decisions were made. Denial of this information would in all likelihood be a violation of due process as well as effectively gutting the reasons for applying the exhaustion doctrine in FOIA cases.").

Ms. Sack is a representative of an educational institution. She is a Ph.D. candidate and President's Fellow at the University of Virginia, Woodrow Wilson Department of Politics. She intends to utilize any responsive records in her research into polygraph bias and present her

results in a publicly available form. Her Department has stipulated that she is to be treated as a representative of the university. I have attached a letter to that effect.

Ms. Sack is also requesting a public interest fee waiver. There can be no question that the information sought would contribute to the public's understanding of government operations or activities and is in the public interest. Her research is of interest to the public at large, because bias in polygraphs is an under-explored phenomenon that potentially affects millions of Americans. Experts estimate that close to 2.5 million polygraph exams are administered annually in the United States. In the FBI alone, the number of polygraph exams conducted solely in connection with pre-employment and employee security screenings rose nearly 750% from 2002 to 2005. By late 2009, 15% of U.S. Customs and Border Protection ("CBP") applicants were polygraphed, an increase of almost 10% from the previous year. CBP polygraph failure rate estimates range from 60% to 99.7%, or 340 of 341. The Anti-Border Corruption Act of 2010 mandated that by 2013, all CBP applicants be tested before hiring. There is also an expanding formal and informal global network of U.S. polygraph training and equipment recipients. Formally, the United States exports polygraph training and equipment as part of U.S.-sponsored anti-corruption programs such as Plan Colombia, the Mérida Initiative in Mexico, and others in the Bahamas, Bolivia, Guatemala, Honduras, and Iraq. Informally, the United States exports polygraph training and expertise to strategic allies, as in the cases of Singapore, South Korea, Japan, Australia, and Taiwan. Despite the prevalence of polygraphy inside and outside the federal government, little research is publicly available regarding bias, a vacuum which Ms. Sack intends to fill through her research. Her graduate training qualifies her to extract, synthesize, and effectively convey the requested information to the public in a form which would significantly contribute to the public's understanding of the government's use of polygraphy.

I also specifically state for the record Ms. Sack's unwillingness to pay any fees for this request. Please do not delay the processing of this request by needlessly requesting further confirmation of this unwillingness to pay fees or terminate the processing of this request for failure to provide you with such confirmation. This statement is a full and unequivocal refusal to pay *any* fees for this request.

Please ensure that, in accordance with the DC Circuit's ruling in *Chambers v. Dep't of the Interior*, 568 F.3d 998 (D.C. Cir. 2009), all records potentially responsive to this FOIA request are immediately preserved from destruction until the final resolution of this FOIA action. Destruction of potentially responsive records after the receipt of a FOIA request is considered "contumacious conduct" by the DC Circuit. *See id.* at 1004.

The DOD is required by law to respond to this request within 20 working days. Failure to timely comply may result in the filing of a civil action against your agency in a United States District Court.

Please provide any records produced in response to this request in electronic (soft-copy) form. Please provide soft-copy records by email or on a CD if email is not feasible. However, Ms. Sack does not agree to pay an additional fee to receive records on a CD, and in the instance that such a fee is required, she will accept a paper copy of responsive records. If a public interest fee waiver is granted, the previous statement is moot, as Ms. Sack expects that this will waive the

charges for any CDs as well, thereby allowing the DOD to release the soft-copy records to her free of charge.

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me.

Sincerely,

Kel McClanahan

## AUTHORIZATION AND PRIVACY WAIVER

I, Katelyn Sack, hereby authorize the law firm National Security Counselors and any attorney associated with it (collectively "my attorneys") to file Freedom of Information Act ("FOIA") requests on my behalf with any agency of the United States government. I also authorize any agency of the United States government to discuss any FOIA requests filed by me or on my behalf (collectively "my requests") with my attorneys. A release to my attorneys shall be considered the legal equivalent of a release to me. A photocopy of this authorization shall have the same effect as the original.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

_Katel Sr_
Katelyn Sack

_05-18-2011_
Date

 **UNIVERSITY of VIRGINIA**

WOODROW WILSON DEPARTMENT OF POLITICS
P.O. Box 400787
Charlottesville, VA 22904-4787
☎434 924 3192 (fax: 434 924 3359)

JEFFERY A. JENKINS
*Associate Professor & Director of Graduate Studies*
*Office Location:* Gibson Hall S 261
*Email:* jaj7d@virginia.edu

June 30, 2011

Re: Fee category verification and fee waiver request support

To Whom It May Concern:

This letter verifies that Katelyn Sack's FOIA request to which it is attached falls into the "academic" fee category. Ms. Sack is a Ph.D. student and President's Fellow in Politics at the University of Virginia. She intends to review, evaluate, synthesize, and present the requested data, analyses, policies, protocols, and practices in a publically available, usable form. This intention is consistent with U.Va.'s scholarly research goals.

The University of Virginia Politics Department is an institution of graduate higher education which operates programs of scholarly research. Ms. Sack's request is on behalf of this institution, one of the primary aims of which is to explain contemporary political developments in a broad philosophical and historical context that sheds light on the long-term development of institutional structures that shape political behavior norms and public policies. Ms. Sack is acting as a representative of the University of Virginia Department of Politics, and you may consider the Department to be the requester for purposes of fee calculations.

This letter also supports Ms. Sack's request for a fee waiver, on the grounds that disclosure of the requested information will significantly contribute to public understanding of government operations and activities. Ms. Sack's graduate training qualifies her to extract, synthesize, and effectively convey the requested information to the public. Her research is of interest to the public at large, because bias in polygraphs is an under-explored phenomenon that affects millions of Americans.

Sincerely,

Jeffery A. Jenkins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN SACK,                              )
                                          )
         Plaintiff,                       )
                                          )
         v.                               )        Civil Action No. 12-cv-00244-RLW
                                          )
CENTRAL INTELLIGENCE AGENCY, et al.,      )
                                          )
         Defendants.                      )
                                          )

# Exhibit E

**TOP SECRET/SI/NF/MR**

U.S. Department of Justice



Federal Bureau of Investigation
*Washington, D.C. 20535*

Date:        February 28, 2013

To:          ▊▊▊▊▊▊                                                    FRCP 5.2
             Office of Inspector General                               LCR 5.4(f)
             Department of Defense
             Suite 14L24
             4800 Mark Center Drive
             Alexandria, Virginia 22350-1500

From:        David M. Hardy
             Section Chief
             Record/Information Dissemination Section
             Records Management Division

Subject:     FOIA Request of Kel McClanahan, Esquire on behalf of Katelyn Sack
             FBI FOIA Request# 1204486-000
             Re: Polygraphs/Records Relating to Use by DOD Components
             OIG/DOD Reference No. 12-00004-L

        This is in response to your letter dated December 6, 2012 requesting the FBI to make a disclosure
determination regarding the information contained in the attached Department of Defense document.

        After reviewing the FBI information, we recommend that:

                the portions of information we have marked be withheld pursuant to
                         subsections (b)(1), (b)(3) [50 U.S.C. 403-1(i)(1), National Security Act
                         of 1947], (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E) of Title 5, United States Code,
                         Section 552.

        The remainder of the information may be disclosed.

        Notwithstanding our assertion and application of the aforementioned exemptions, our office is of the
opinion that the FBI information contained in the attached document may not be responsive to Ms. Sack's request
as it relates solely to the FBI-led joint agency investigation of Ana Belan Montes and not to the usage of
polygraphs.

        We understand that you are currently coordinating or plan to coordinate your response with other
agencies that have equities in this record, as it is a compilation of information gathered from multiple agencies.
Our office supports this approach and recommends that the Central Intelligence Agency (CIA), Director of Central
Intelligence (DCI), Defense Intelligence Agency (DIA), Department of Justice (DOJ), and National Security Agency
(NSA) be afforded the opportunity to review the record to insure adequate protection and handling of their
information.

        Finally, please advise the requester of the following in regards to an appeal:

        You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of
Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an
appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be
received by OIP within sixty (60) days from the date of this letter in order to be considered timely.   The
envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIA
Request Number in any correspondence to us for proper identification of your request.

**THIS COMMUNICATION IS UNCLASSIFIED**
**UPON REMOVAL OF CLASSIFIED ENCLOSURES**

**TOP SECRET/SI/NF/MR**

TOP SECRET/SI/NF/MR

February 28, 2013
███████████
Office of Inspector General
Department of Defense

Page – 2

FRCP 5.2
LCR 5.4(f)

     In the event you have any questions or concerns relating to this response, please contact LAS ███████
███ of my staff at ████████████ to discuss the same.

Enclosure

**THIS COMMUNICATION IS UNCLASSIFIED**
**UPON REMOVAL OF CLASSIFIED ENCLOSURES**

TOP SECRET/SI/NF/MR

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN SACK,                          )
                                       )
        Plaintiff,                     )
                                       )
            v.                         )          Civil Action No. 12-cv-00244-RLW
                                       )
CENTRAL INTELLIGENCE AGENCY, et al.,   )
                                       )
        Defendants.                    )
                                       )

# Exhibit F

## Argall, Dennis J (RMD)(FBI)

| | |
|---|---|
| **From:** | ▇▇▇▇▇▇▇▇▇▇ |
| **Sent:** | Wednesday, January 30, 2013 2:49 PM |
| **To:** | Argall, Dennis J (RMD)(FBI) |
| **Subject:** | 12-00004-L DoDIG FOIA Litigation - Part 1 |
| **Attachments:** | 12-00004-L FOIA Request.pdf; 12-00004-L Complaint.pdf; FBI Consult.pdf; Bates 000445-000447.pdf; Bates 000448-000452.pdf |

CLASSIFICATION: SECRET//FOUO//20380130

CLASSIFICATION:   SECRET

Denny,

(U) In addition to the 180 page report that we sent you for review for this litigation, we are also processing some of the report working papers.  The attached documents were determined to be responsive to the request and require review by your office.  I'll be sending the documents in two emails.  The documents were too big to send in one email.  I've attached a copy of the responsive documents, the original request letter, the litigation complaint, and a consultation memo. Please note that we have a short suspense for this consultation. We will need a response no later than March 1, 2013. If you have any questions, please let me know.

Thank you,

▇▇▇▇▇▇▇▇
Senior FOIA Specialist
Department of Defense
Office of the Inspector General
Unclass Tel: ▇▇▇▇▇▇▇▇▇

FRCP 5.2
LCR 6.4(†)

REGRADE UNCLASSIFIED W/O ATTACHMENTS.

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20380130
DATE OF SOURCE: 20130130

CLASSIFICATION: SECRET//FOUO//20380130

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN SACK,                          )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )        Civil Action No. 12-cv-00244-RLW
                                       )
CENTRAL INTELLIGENCE AGENCY, et al.,   )
                                       )
        Defendants.                    )
                                       )

# Exhibit G

SECRET

U.S. Department of Justice



Federal Bureau of Investigation
*Washington, D.C. 20535*

Date:       February 21, 2013

To:         ████████████ Senior FOIA Specialist
            Office of Inspector General
            Department of Defense
            4800 Mark Center Drive, Suite 14L24
            Alexandria, Virginia 22350-1500

*FRCP 5.2*
*LCR 5.4(f)*

From:       David M. Hardy
            Section Chief
            Record/Information Dissemination Section
            Records Management Division

Subject:    FOIA Request of Kel McClanahan, Esquire on behalf of Katelyn Sack
            FBI FOIA Request# 1208047-000
            Re: Polygraphs/Records Relating to Use by DOD Components
            OIG/DOD Reference No. 12-00004-L

        This is in response to your letter dated January 30, 2013 requesting that we make a disclosure
determination regarding the information contained in the attached classified Federal Bureau of Investigation (FBI)
documents.

        Our Classification Unit has reviewed the referred documents and applied the appropriate portion
markings to our information.  In addition, we have applied redactions to withhold some of our information pursuant
to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C) and/or (b)(7)(E).   Of the 35 pages referred to us, 26 pages (five
documents) contain intertwined DIA and CIA equities, and 17 pages originated with either the Defense Intelligence
Agency (DIA) or the Central Intelligence Agency (CIA) and were attached to the FBI's EC's and/or mentioned
throughout the body of the ECs by both the FBI Special Agents and other agencies' Special Agents. Therefore,
depending upon how DIA and CIA recommend their information be handled, our office may need to apply
additional exemptions or classification markings to portions, parts, specific terminology, or our entire document to
ensure the appropriate exemptions are applied consistently and the other agencies' information is adequately
protected throughout the documents.   Consequently, we recommend that several of the classified documents
referred to us, which contain DIA and/or CIA information or equities be forwarded to those agencies for
consultation.  In an effort to comply with the strict time constraints of the litigation and to insure expeditious
handling of all material originally referred to us by your office, you have advised that you will handle the consultation
referrals needing to be made to the DIA and CIA concerning their agency's information contained in FBI classified
documents.   To facilitate this process, we have attached hereto as "Appendix A," five (5) documents to be referred
to the DIA and as "Appendix B," one (1) document to be referred to the CIA.  Each agency's information has been
bracketed in red.  We respectfully request that a courtesy copy of your correspondence transmitting the
aforementioned referrals to the DIA and CIA be sent to our office.  We also ask that you please include in the
transmittal correspondence to each agency, instructions asking that they review the information bracketed in red
and return the documents to our office, reflecting any deletions each agency deems appropriate, citing the
exemptions each agency claims and advising our office if the document still warrants classification.  Upon return
of the documentation referred to the DIA and CIA, we will expeditiously review the same, make any changes to
either Classification or exemptions and provide to you a final and releasable version of the attached documents.

        In the event you have any questions or concerns relating to this response, please contact LAS ██████
████ of my staff at ████████████ to discuss the same.


Enclosures


**THIS COMMUNICATION IS UNCLASSIFIED
UPON REMOVAL OF CLASSIFIED ENCLOSURES**


SECRET

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN SACK,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          Civil Action No. 12-cv-00244-RLW
                                       )
CENTRAL INTELLIGENCE AGENCY, et al.,   )
                                       )
          Defendants.                  )
                                       )

# Exhibit H



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

*VIA SIPRNET*

Date:       April 11, 2013

To:         ████████████
            Office of Inspector General
            Department of Defense
            Suite 14L24
            4800 Mark Center Drive
            Alexandria, Virginia 22350-1500

FRCP 5.2
LCR 5.4(F)

From:       David M. Hardy
            Section Chief
            Record/Information Dissemination Section
            Records Management Division

Subject:    FOIA Request of Kel McClanahan, Esquire on behalf of Katelyn Sack
            FBI FOIA Request# 1208047-000
            Re: Polygraphs/Records Relating to Use by DOD Components
            OIG/DOD Reference No. 12-00004-L

        This is in response to your letter dated January 30, 2013 requesting the FBI to make a disclosure
determination regarding the information contained in the attached classified Federal Bureau of Investigation
(FBI) documents.

        After reviewing the Bureau's information, we recommend that:

            ☑       the portions of information we have marked be withheld pursuant to
                    subsections (b)(1), (b)(3) [50 U.S.C. 403-1(i)(1), National Security Act
                    of 1947] and [10 U.S.C. § 424], (b)(6), (b)(7)(C) and (b)(7)(E) of Title 5, United
                    States Code, Section 552.

        The remainder of the information may be disclosed.

        Notwithstanding our assertion and application of the aforementioned exemptions, our office is of the
opinion that the FBI information contained in the attached document may not be responsive to Ms. Sack's
request as it relates solely to the FBI-led joint agency investigation of Ana Belan Montes and not to the usage
of polygraphs.

        In the event you have any questions or concerns relating to this response, please contact LAS ████
████ of my staff at ████████████ to discuss the same.

Enclosure