**NSA Decl.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHRYN SACK,  )<br>  )<br>Plaintiff  )<br>  )<br>v.  )<br>  )<br>DEPARTMENT OF DEFENSE,  )<br>  )<br>Defendant.  )<br>  ) | Civil Action No. 12-00244 |

## DECLARATION OF DIANE M. JANOSEK

I, DIANE M. JANOSEK, hereby declare and state:

1. I am currently the Deputy Associate Director for Policy and Records for the National Security Agency ("NSA" or "Agency"). I have served with NSA for 13 years, and prior to my current assignment, I held various leadership positions throughout the Agency. As the Deputy Associate Director of Policy and Records, I am responsible for the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for NSA records.

2. In addition, I am a TOP SECRET classification authority pursuant to section 1.3 of Executive Order (E.O.) 13526 dated 29 December 2009 (75 Fed. Reg. 707). Consequently, it is my responsibility to assert the FOIA exemptions over NSA information in the course of litigation. Through the exercise of my official duties, I have become familiar with the current litigation arising out of a request for information filed by the Plaintiff because NSA received a consultation from the Department of Defense's

("DoD") Inspector General. The DoD's Inspector General received a FOIA request from Plaintiff dated October 24, 2011 seeking "all Department of Defense Office of the Inspector General ("DODIG") records relating to the use of polygraphs by DOD components." The DoD Inspector General referred two documents to the NSA for review because these two documents contained NSA equities. The referred documents consist of a summary of a meeting between members of the DoD Inspector General's Office and NSA's Polygraph Program Manager regarding NSA's use of polygraphs as a component of the agency's personnel security determination process (three pages) ("three-page Summary") and a DoD IG Report that reviewed the actions taken to deter, detect, and investigate the espionage activities of a former Defense Intelligence Agency employee (180 pages) ("180-page Report").

3. The purpose of this declaration is to advise the Court that NSA withheld certain information in the two referred documents, as set forth below, because it is properly exempt from disclosure under the FOIA based on Exemptions 1, 2, 3, and 7(E), 5 U.S.C. §§552(b)(1),(2),(3) and (7)(E), respectively, for the three-page Summary and Exemptions 1 and 3 for the 180-page Report.

### THE DOD INSPECTOR GENERAL'S REFERRAL OF THE THREE-PAGE SUMMARY

4. By letter dated October 24, 2011, Plaintiff submitted a FOIA request to the DoD Inspector General ODNI seeking "all Department of Defense Office of the Inspector General ("DODIG") records relating to the use of polygraphs by DOD components." By memorandum dated January 30, 2013, the DoD's IG referred to NSA for consultation one document consisting of three pages that was responsive to the Plaintiff's FOIA request.

This document is a summary of an April 20, 2004 meeting between DoD's Office of the Inspector General and NSA's Polygraph Program Manager regarding NSA's use of polygraphs as a component of the agency's personnel security clearance determination process.

5. NSA's FOIA Office conducted a line-by-line review for NSA information within this three-page document and ultimately for a determination on whether any of the NSA information was exempt from release under the FOIA. NSA's FOIA Office consulted with the Agency's Office of Security as the information in this document relates to a core function of the Office of Security —conducting polygraphs on applicants, military assignees, current employees and contractors. NSA withheld information in two full paragraphs on page 3 of the responsive document based on Exemption 1 of the FOIA because the information in these paragraphs is currently and properly classified in accordance with E.O. 13526, as further explained below.

6. Certain NSA information was withheld based on Exemption 3 of the FOIA pursuant to Section 6[1] of the National Security Agency Act of 1959, Pub. L. No. 86-36, 73 stat. 63 (codified as 50 U.S.C. §402 note). This information consists of the classified paragraphs mentioned above, as well as the name of NSA's Polygraph Program Manager, the number of Quality Control Center/branches, the number of full-time NSA polygraphers, the number of new DoD Polygraph Institute graduates (all of which were NSA employees), the number of additional hires, the number of polygraph examination rooms by location, the number of polygraphs a new polygrapher must conduct to

---

[1] Section 6 provides that "nothing in this Act or any other law. . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency."

complete an NSA internship, the number of exams generally conducted by new polygraphers on a daily basis, specific details about how NSA conducts polygraphs, and sensitive information about polygraphs and investigations. All of this withheld information would reveal information about a "function" of the NSA, specifically, its polygraph activities which directly support the Office of Security's efforts to achieve a security posture that manages the risks arrayed against NSA/CSS's extraordinarily sensitive and fragile missions by ensuring that security standards remain strong.

7. In addition to being exempt based on Exemption 3 of the FOIA, as described above, certain information is likewise exempt based on Exemption 2 of the FOIA as the information pertains to internal personnel rules and practices of the NSA.

8. Finally, certain information, in addition to being exempt based on Exemption 3 of the FOIA, is also exempt from release based on Exemption 7(E). This information, if disclosed, would reveal sensitive law enforcement techniques, all of which would undermine the NSA's efforts to have a suitable and trustworthy workforce.

**THE DOD INSPECTOR GENERAL'S REFERRAL OF THE 180 PAGE REPORT**

9. By letter dated December 6, 2012, the DoD Inspector General referred the 180 page report to NSA for review because it potentially contained NSA equities. NSA conducted a line-by-line review of this 180-page report and withheld three pieces of information on pages 116-17 of this responsive document based on Exemption 1 of the FOIA because the information in these paragraphs is currently and properly classified in accordance with E.O. 13526, as further explained below. Additionally, this same information was withheld based on Exemption 3 of the FOIA pursuant to Section 6 of the

4

National Security Agency Act of 1959, Pub. L. No. 86-36, 73 stat. 63 (codified as 50 U.S.C. §402 note).

10. The three pieces of information pertain to the organization of the NSA, which is classified, as indicated above, and protected from release based on Section 6 of the NSA Act of 1959. Revealing the organization of the NSA would also disclose the functions and activities of the Agency because organizational names and titles would inform the reader of NSA's functions and activities. Congress, by enacting Section 6, has expressly protected such information from public release notwithstanding any other law, to include the FOIA.

## FOIA EXEMPTION ONE

11. Section 552(b)(1) of the FOIA provides that the FOIA does not require the release of matters that are specifically authorized - under criteria established by an Executive Order - to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order. The current Executive Order that establishes such criteria is E.O. 13526.

12. Section 1.4 of E.O. 13526 provides that information shall not be considered for classification unless it falls within one (or more) of seven specifically enumerated categories of information. The category of classified information in the document at issue here is found in Section 1.4(c), which includes intelligence activities (including special activities), intelligence sources and methods, or cryptology.

13. In my role as a TOP SECRET classification authority, I have reviewed the three-page Summary and the 180-page Report forwarded to NSA for consultation by the DoD's Inspector General. For the following reasons, I have determined that the

information withheld by NSA in the two paragraphs on page 3 of the three-page Summary and the three pieces of information on pages 116-17 of the 180-page Report pursuant to Exemption 1 is currently and properly classified at the SECRET level in accordance with E.O. 13526. Accordingly, the release of this information could reasonably be expected to cause serious damage to the national security.

14. The information at issue in the three-page summary, if released, would reveal information about how NSA conducts its polygraph mission, and as such, the disclosure of this information could reasonably be expected to cause serious damage to the national security by potentially jeopardizing NSA's personnel security program. Likewise, the three pieces of information withheld on pages 116-17 in the 180-page Report would reveal sensitive organizational details about the NSA. Accordingly, the operational details on how NSA conducts its polygraph mission and information that reveals organizational details about the NSA are exempt from disclosure pursuant to Exemption 1 of the FOIA because the information is currently and properly classified in accordance with E.O. 13526.

## FOIA EXEMPTION THREE

15. Section 552(b)(3) of the FOIA provides that the FOIA does not require the release of matters that are specifically exempted from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matter to be withheld. *See* 5 U.S.C. § 552(b)(3). Review of the application of an Exemption 3 statute consists solely of determining that the statute relied

upon qualifies as an Exemption 3 statute and that the information withheld falls within the scope of the statute.

16. The information at issue in these two documents falls squarely within the scope of a well-recognized Exemption 3 statute. As set forth in section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 402 note), **"nothing in this Act or any other law. . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency."** Congress, in enacting the language in this statute, decided that disclosure of any information relating to NSA activities is potentially harmful. *Hayden v. NSA,* 608 F.2d 1381, 1390 (D.C. Cir. 1979); *see also Wilner v. NSA*, 592 F.3d 60, 75 (2nd Cir. 2010); *Larson, et al. v. Department of State*, 565 F.3d 857, 868 (D.C. Cir. 2009); *Students Against Genocide, et al. v. Department of State, et al.*, 257 F.3d 828 (D.C. Cir. 2001); *Lahr v. National Transp. Safety Bd., et al.*, 453 F. Supp.2d 1153, 1171-73 (C.D. Cal. 2006); *People for the American Way v. NSA*, 462 F.Supp.2d 21, 30 (D.D.C. 2006), *Florida Immigrant Advocacy Center v. NSA*, 380 F.Supp.2d 1332, 1340-41 (S.D. Fla. 2005). Federal courts have held that the protection provided by this statutory privilege is, by its very terms, absolute. *See, e.g., Linder v. NSA*, 94 F. 3d 693 (D.C. Cir. 1996). Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. *See Hayden,* 608 F.2d at 1389. Further, while in this case the harm would be serious, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege, but only to show that the information relates to its

7

activities. *Id.* at 1390. To invoke this privilege, NSA must demonstrate only that the information it seeks to protect falls within the scope of section 6. NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified.

17. Based upon my review of the responsive NSA material, I conclude that the information that was withheld (and continues to be withheld) is protected from disclosure by Section 6 of the National Security Act of 1959 (Pub. L. 86-36) (50 U.S.C. § 402 note), because the information concerns the name of NSA's Polygraph Program Manager, the number of Quality Control Center/branches, the number of full-time NSA polygraphers, the number of new DoD Polygraph Institute graduates, the number of additional hires, the number of polygraph examination rooms by location, the number of polygraphs a new polygrapher must conduct to complete an NSA internship, the number of exams generally conducted by new polygraphers on a daily basis, certain details about how NSA conducts polygraphs, and sensitive information about polygraphs and investigations. All of this information undeniably relates to "any function of the National Security Agency" – indeed, it relates to one of NSA's primary functions, its polygraph program, which is intended to ensure a suitable and trustworthy workforce. Further, the sensitive details about NSA's polygraph program, if released, would disclose "information with respect to [NSA's] activities in furtherance of its polygraph program. See 50 U.S.C. § 402 note. Likewise, the withheld information on pages 116-17 of the 180-page Report, which would reveal sensitive organizational information about the NSA unquestionably relates to the organization of the NSA, and thus, is protected from release under Section 6 of the NSA Act of 1959. See 50 U.S.C. § 402 note

## FOIA EXEMPTION TWO

18. Exemption 2 of the FOIA permits an agency to withhold information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The U.S. Supreme Court limited Exemption 2 to "records relating to issues of employee relations and human resources." *Milner v. Department of Navy*, 131 S.Ct., 1259, 1271 (2011).

19. In the three-page summary, a document that summarizes an April 20, 2004 meeting between DoD's Office of the Inspector General and NSA's Polygraph Program Manager regarding NSA's use of polygraphs as a component of the agency's personnel security clearance determination process, NSA withheld information about its polygraph program regarding applicants, and information about how it administers its polygraph program for employees post-hire. These withholding can be found in the last three paragraphs on page 2 and the second through fifth paragraphs on page 3.[2]

20. The withheld information clearly relates to employee relations as the information pertains to the suitability of applicants and post-hire employees and necessarily would involve "personnel rules and practices of an agency." *See Institute for Policy Studies v. CIA*, 885 F.Supp. 2d 120, 146 (D.D.C. 2012) (the CIA's withholding of a signature of a CIA officer, internal filing instructions, and an internal coversheet with administrative routing information was proper under Exemption 2). Accordingly, the Agency's withholding of this information under Exemption 2 was proper.

---

[2] All of the information withheld by NSA pursuant to Exemption 2 was withheld pursuant to other FOIA exemptions as well, namely exemptions 3 and 7(E). This information directly pertains to a function of the NSA (its polygraph examination mission) and relates to its activities undertaken in furtherance of this mission. Likewise, this information reveals sensitive law enforcement techniques that are necessary to ensure a suitable and trustworthy workforce.

## **EXEMPTION 7(E)**

21. Exemption 7(E) of the FOIA protects all law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

22. The information at issue in the three-page Summary pertains to sensitive polygraph examination techniques and procedures, which if disclosed, could enable individuals to circumvent these techniques. NSA's polygraph examination techniques must be protected from public release to prevent the possibility that examinees could employ countermeasures, thereby thwarting NSA's goal of having suitable and trustworthy employees, military assignees, and contractors. The federal courts have repeatedly protected the release of polygraph techniques and procedures based on Exemption 7(E) of the FOIA. *See e.g., Hale v. DoJ*, 973 F.2d 894, 902-03 (10th Cir. 1992) (upholding agency's withholdings based on exemption 7(E) concluding that disclosure of "polygraph matters" could lessen effectiveness), *cert granted, vacated & remanded on other grounds*, 509 U.S. 918 (1993); *Piper v. DOJ*, 294 F.Supp. 2e 16, 30 (D.D.C. 2003) (holding that polygraph materials were properly withheld because release would reveal sensitive "logistical considerations"); *Shores v. FBI*, 185 F.Supp. 2d 77, 85 (D.D.C. 2002) (determining that agency properly withheld polygraph information to preserve the effectiveness of polygraph examinations).

23. Based on the above, the NSA's withholding of information related to polygraph techniques based on Exemption 7(E) of the FOIA was proper. The Agency in

10

an unclassified declaration cannot discuss the specific techniques withheld or explain what countermeasures could be employed by examinees without undermining the very information it has protected under exemption 7(E) as well as exemptions 1, 2, and 3.

24. As indicated above, NSA's withholdings in the three-page Summary and 180-page Report were appropriate and consistent with the FOIA's requirements under the circumstances. The Court could justify all of the NSA's withholdings in these two documents based on Exemption 3 alone pursuant to Section 6 of the NSA Act of 1959 as the withheld information relates to "any function" of the NSA and "information with respect to [NSA's] activities" in furtherance of its polygraph mission. For the three withholdings in the 180-page Report, the withheld information also reveals the organization of the NSA. Congress expressly protected such information from disclosure in Section 6 of the NSA Act of 1959, and Exemption 3 serves to ensure that congressional judgment is not implicitly overridden by the FOIA. *See Association of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) ("[T]he purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision."); *Founding Church of Scientology of Washington, DC v. NSA*, 610 F.2d 824, 828 (D.C. Cir. 1979) ("Section 6 . . . reflects . . . a congressional judgment that, in order to preserve national security, information elucidating the subjects specified ought to be safe from forced exposure. The basic policy choice was made by Congress, not entrusted to administrative discretion in the first instance."). Accordingly, all of withheld information is protected from release based on Exemption 3 of the FOIA, but this same information is also protected from disclosure based on Exemption 1, 2, or 7(E) of the FOIA, as set forth above.

25. I am familiar with Attorney General Holder's memo dated 19 March 2009, which encourages agencies to make discretionary disclosures and which directs agencies to segregate and release nonexempt information. In evaluating the documents discussed in this declaration, NSA conducted a document-by-document and line-by-line review and segregated all nonexempt from exempt information. I have determined that there is no additional reasonably segregable information that can be released to the plaintiff.

26. I declare under penalty of perjury that the facts set forth above are true and correct.

Executed, this 12th day of April 2013, pursuant to 28 U.S.C. § 1746.

*[signature]*
DIANE M. JANOSEK
Deputy Associate Director for Policy and Records
National Security Agency